Let's see, Shreleka Jayanthi is here for the appellate. George Delgado is here for the government, and I see that, counsel, you're ready to proceed with the arguments. We're going to hear the first case, the Curtin case first. Judge Luck will be participating in this oral argument remotely by audio. Judge Luck Good morning. George Delgado Good morning, Judge Luck. Judge Luck Good morning, Judge Luck. George Delgado And at the conclusion of the argument, we're going to recess. The judges are going to conference on that case. It should take about 15 or 20 minutes, and then we're going to reconvene and hear the next two cases. If counsel are ready to proceed, Mrs. Jayanthi, you may proceed. Shreleka Jayanthi Judge Wilson, may it please the court. Good morning. My name is Shreleka Jayanthi, and at counsel's table with me is Bernardo Lopez. We appear from the Federal Public Defender's Office on behalf of Mr. Lawrence Curtin, the appellant. Your Honor, for a person to be found guilty of a crime, there must be proof beyond a reasonable doubt. And because that proof does not exist in this case, we are asking the court to reverse Mr. Curtin's conviction. On a sufficiency claim, of course, this court views the evidence in the light most favorable to the government and allows for reasonable inferences from the facts that are in fact in evidence. However, even so, it is law in the circuit that where the evidence gives equal or nearly equal circumstantial support to a theory of innocence, just as well as a theory of guilt, a reasonable jury must necessarily entertain a reasonable doubt. And if there's a conviction, the court must reverse. Can I ask you just a quick question, since we're starting with the standard, I think appropriately, and I appreciate your candor. But isn't there, there's something of a come on factor to this case, right? I mean, plain text, the objection itself contains two threats. And then even without respect, with or without respect to the linking to the YouTube video, I mean, I don't know, the text is what it is, right? Your Honor, respectfully, I think that the text has to be read. The sentence itself, if it were, I am threatening Judge Maynard with death and bodily harm, and that were the entire sentence, I think we wouldn't be here. But that's not what the sentence is. It starts, it is obvious from the totality of the words in the song, including its title, and then goes on to have the phrase that Your Honor is describing with the plain text. But I think anyone reading that sentence would have the natural thought, certainly someone who is required to consider all of the evidence would have the thought, well, what's the song? And I think that's... Counselor, isn't it a subjective test? In other words, if the test is that it's whether the defendant intended it to be a threat, isn't his understanding of the link to the video means relevant, as opposed to what a person would understand the link to be, or even more removed from that, what I might believe it means? And here we happen to notice that this is a tendency to exploit us, that the totality of the circumstances based on linking to the video and a specific part of the video that is in holding hands with the preacher indicates that is what that means. I'm very sorry to interrupt. I'm having a little trouble understanding. Yeah. Judge Locke, this is Judge Newsom. It's difficult for me to understand as well. All right. I'll let you do it. Let me ask you this. In the objection to the report and recommendation, there's a quote, Mr. Curtin says, I am threatening Maynard with death and bodily harm, period. That seems to be enough with regard to the sufficiency of the evidence. Your Honor, what he says is it is obvious from the totality of the song, including its title, that I am threatening Maynard with death and bodily harm. And I think on a sufficiency review, this court should look at the complete sentence. And I think that complete sentence necessarily requires that one looks at the video and the song. And I think the jury in this case— Make that argument for the jury. Make that argument to the jury. Jury didn't buy it. Certainly, Your Honor. I think the issue is that there is an ambiguity question. If the statement is so ambiguous that a theory of defense and a theory of guilt are equally plausible, I think the government then must enter facts into evidence that would remove that ambiguity. And I think here the government had that chance and didn't do it. I think their argument on appeal, some—a theory that was in fact not advanced at the trial stage, was that there is consistency between the song and the statement. Can I just try, although Judge Locke was breaking up and it was difficult to understand the question, I want to try to give you an opportunity to answer what I think he might have been asking. I think he might have been asking, is this—are we viewing this evidence sort of as we would understand it or subjectively as a reasonable juror would conclude that the defendant himself understood it? I think certainly the standard is subjective, Your Honor. The question is, is there sufficient evidence to show that Mr. Curtin intended the statement as a threat? And I think that's where the other issue with Your Honor's question about whether the fact that the literal meaning of the statement is, I am threatening Maynard with death and bodily harm, is that the theory of defense, a theory that was advanced by the defense at trial, is that the literal meaning is not the intended meaning. And the reason for that is the very common way that people communicate through sarcasm. If I were to post a photograph of myself on the internet in a purple room with purple walls, wearing purple clothes, and hugging a purple teddy bear and smiling, and I said, it is obvious from this photo that I hate the color purple, I think the contradiction between the photo and the statement would be clear. It would be clear that though my literal statement is that I hate the color purple, my intended meaning is that I like the color purple. But let me ask you this. So in your, sort of in your analogy, what in this case is it that's the purple clothes, purple walls, purple shoes, purple everything? Is it the song itself that you think diffuses everything else that's going on in the plain language of the objection? Because I'm not really sure about that. I mean, setting aside what the judge said, should have said, shouldn't have said, whatever, but said, is it not, I mean, is it irrational for a juror to conclude that the song sort of corroborates the text of the objection instead of refutes the text of the objection? Is that an unreasonable inference? I think it's not a reasonable inference on the facts that are in evidence, judge. And I would urge the court to review the video. It is a two minute video that depicts Mr. Curtin apparently celebrating the culture of the community that he's part of there. He's clapping, he's singing, he's smiling, he's participating in, in the church community. I think I would argue that it is clear it has a positive message and that the import of that when he says it is obvious from this video, it is in fact obvious he is doing no such thing. He is not threatening. But I think what I'm on, on this appeal, I'd also like to make the point that let's suppose it's not obvious. Nothing is obvious. It is not obvious that he's being threatening. It's not obvious. He's not being threatening. God only knows why this non sequitur was included. That is an as a threat. And I think it is a very unusual situation that a single statement so ambiguous in meaning gives rise to a conviction on two counts of threats. The jury was out in this. The jury I'm sure also took into consideration the fact that judge Maynard's father was a prominent minister. There were references to her race. There were references to her Yale education, all of which showed that he researched her background. And why couldn't it draw a reasonable inference that the support to conclusion that he acted with the knowledge that his objections would be taken as a threat and with an intent to retaliate. Certainly judge. Thank you for that question. Those are other facts that the jury could have taken into consideration in determining whether he's a true threat. Right? Certainly judge. Thank you for that question. And I think this highlights the sufficiency issue here. While there was evidence that judge Maynard's father was a preacher, there was absolutely no evidence in any way, shape or form entered that Mr. Curtin had any idea of that. There is no investigation into his search history and his computer to see that he had looked that up. There's no investigation of, there's no facts about the size of the community that he has anything to do with the church and the local community that that local church is in fact where judge Maynard's father works. We don't actually know any of that here. I will agree with your honor that Mr. Curtin was aware of what judge Maynard looked like. She was his judge, your honor, in a case as a litigant. And I think the evidence that trial was clear on this, litigants look up their judges. I think to infer from the fact that he was aware of what judge Maynard looked like, to infer from that, that he knew anything about her father would be an unreasonable inference. And I think we wouldn't be in this position, your honors, if the government had had adduced facts, the trial to show that. And I also note that there's a similar problem with the government's argument about the meaning of the word glory. There is an argument on appeal, something that was never mentioned at trial, that in certain communities, the word glory means death. But there was never any evidence of that put forward at trial that Mr. Curtin, there was never any evidence at all that that word had that meaning. And certainly there was never any evidence entered that Mr. Curtin had any idea that he was part of that community, that that community was prevalent. Certainly the plain meaning of the word glory, as I would understand it, would be a positive thing. And my co-counsel is from South Florida. He's from a would have thought the same thing. All right. Thank you, Ms. Jayanti. We have your argument and we'll hear from the government. Mr. Delgado. Good morning, your honors, and may it please the court, George Delgado on behalf of the United States. In this case, there was sufficient evidence, particularly when viewed in the most favorable to the government to convict Lawrence Curtin of sending a threatening communication and for, and also violating 115 doing so with the intent to impede Judge Maynard. As your honors alluded to, the most powerful evidence against Mr. Curtin were his own words, where he gave an interpretation of what threat he was given. And he said very clearly that it is obvious from the totality of words in the song, including its title that I am threatening Maynard with death and bodily harm. Also by holding onto the hand of a preacher of color that I am threatening Maynard, who is a woman of color with death. My learned friend on the other side said that there was no evidence that Mr. Curtin knew that Maynard's father was a preacher in the community, but that is a reasonable inference that can be gathered. Clearly, as you mentioned, he researched into her, for instance, and she knew, he knew that she went to Yale Law School, a statement that he made in one of the previous findings that he did where he called Judge Maynard a liar for having gone to Yale Law School. Judge Maynard never had a hearing with Mr. Curtin, never had an in-person hearing, never had a Zoom hearing. So he didn't know that she was a woman of color. He looked her up and saw that fact. Now, one can take the inference that the a 20 decades old clip in which he is singing with a choir and holding onto the hands of a black preacher to just be a massive coincidence. Or the most, the more reasonable inference, and the one that the jury took was that he was inserting that clip precisely because he thought that it was going to make an impact upon her. And when we're talking about what his intent was, first, and one of the questions about the subjective standard, we view whether a threat is a true threat by the reasonable standard, whether a reasonable person would view that threat, noting in context. There is also a subjective element, which is that the defendant must send a threat for the purpose of issuing a threat or with the knowledge that it would be viewed as a threat. And as in most instances of subjective intent, we can only go by the circumstantial evidence. We don't have a window into Mr. Curtin's mind. He didn't testify in this what he meant, and not only the words themselves, but also the context and the history behind it. Closing counsel said that we don't know why it is that he issued this threat, but the record is pretty clear as to why Judge Maynard had recommended dismissal of four of his cases. He had an axe to grind against her. When she was initially appointed, he filed an objection in May 2020, that is three months before the threat, where he called her a liar. Then later on in July, he filed a motion to file an amended complaint, in which he inserted and wrote a blurry video without any sort of explanation. And then afterwards, when she recommended dismissal, is when he grew angrier. When you could see the anger and the tenor of his objections, you could see it at the old bold caps that he uses to write, and then he issues his threat. As your honors noted, whether or not he meant to be sarcastic by his words was a question put right before the jury. He was argued in an opening argument. He was argued in a closing argument. The jury saw that evidence and rejected it. And now Mr. Curran has an even bigger hurdle, which is he must try to reverse that verdict, but with the evidence being viewed in the light most favorable to the government. I have a question about one of the sentencing issues. Yes. The so-called substantive reasonableness challenge to the district court's arguable consideration of the impermissible factor of her own religious experience. Can you just explain to me, A, do you think that was consideration of an impermissible factor, and B, if so, why it shouldn't matter? It was not. Judge Young himself said that he was giving no credence to his explanation of what the word glory meant in sentencing. He said it several times. He was just giving his own personal experience from his own background what it meant. Ultimately, what he said during sentencing was that he considered all three 553 factors, and he particularly focused on, as judges are allowed to do, the discretion and the seriousness of the offense and the terms in this case. And that's really what drove his sentencing decision. Then later on, when defense counsel noted, if you have considered his mental health issues, he further clarified that he considered those issues when in sentencing. Even if Judge Young had considered that statement, the glory statement, judges are allowed to use their common sense when sentencing. I know there was argument as to that there was no evidence as to what the word glory meant, but then it was also a reasonable inference that the jury could have taken. It's a normal word that, based on their own backgrounds, they could have ascribed some meaning to, just like Judge Young in his own common sense could have ascribed some meaning to. Certainly there was a religious connotation to this threat, and with the notion of religion as a notion of an afterlife, one only goes into an afterlife if one dies. That is a common sense interpretation the jury could have made and what Judge Young could have made as well. I guess my concern is that I take your point that there is this sort of error. I'm not really considering this for sentencing purposes, but, and then there's a paragraph of text about, like, here's my own experience in the evangelical church, and when we say glory, this is what we mean. It seems to me more than just sort of a passing comment, but so I take your point to be that because this is a substantive reason, because we've categorized this particular error or challenge as a substantive reasonableness challenge, it can sort of wash out if, in the sort of the arc of things, there is no abuse of discretion, and because the judge went on to consider racial animus and the history of threats, that it's in effect harmless error. I shouldn't ascribe one doctrine to another, but it sort of nets out, so as not to be substantively unreasonable. Is that the argument? If you think this was an impermissible factor in the first place, that it might nonetheless not be fatal because we've characterized this particular challenge as substantive, and so there's this overarching abuse of discretion standard that applies to the whole thing. Right. Is that right? Its argument is multifactored, obviously, with safety nets in place. Sure. First argument is that he did not consider that factor for his own words. My second argument is that if he did consider it, it was not an impermissible factor, and to the extent the extent of the court finds that it is an impermissible factor, the sentence was reasonable anyways. At least one panel from this court has affirmed the 121th sentence for threatening a judge, and this was a serious conduct. This is a history of threatening other judges. This is something that had a profound impact on Judge Mills Maynard, and something that the judge felt appropriate bearing upwards, and it was a substantively reasonable sentence. For those reasons, your honor, the United States respectfully requests that the court affirm the conviction and sentence against Mr. Curtin. Thank you. Thank you, Mr. Delgado. Ms. Jayanti, you have reserved some time for rebuttal. Your honors, I'd like to start where my learned friend just left off. I think it is clear that the judge did consider his own personal views on the word glory, and I say that because the 33 months, the parties, all parties, the government included, asked for 33 months or less. Our position was that time served was sufficient, and the judge gave 60 months, almost double the high end for a person whose offense was a single instance and a comment, as I described, that was ambiguous. I think he clearly took into account his own experience about the word glory, and I for as long as he did on that word makes that clear. Can I ask you a quick question about this? Are we sure that this error was preserved? The only objections that I can find in the sentencing transcript are the following. One, we object to the reasonableness of the sentence. Not really sure if that's specific enough to preserve an objection like this. And then second, we object specifically to the upward variance given paragraph 84 and the lack of consideration of his mental health issues. Those aren't sort of targeted toward this religious commentary issue, so I'm wondering about preservation of this particular sentencing error. Your honor, I would ask that the court find it is preserved. I think my co-counsel at the trial spoke at length about the number of issues that would warrant a downward variance, and I think therefore our objection to the upward variance makes clear that we're asking to object to anything that is viewed as a counterweight to the extensive mitigating factors that we had set forth. And I think in any case, this court should view that as an inappropriate consideration for the as I said, I think the offensive conviction for all the reasons I described before is extremely ambiguous. I also think there are mitigating factors here that go well beyond the average case. He was 78 years old, suffering from so many chronic illnesses, suffering from acute illnesses, cancer on his hands that was hurting his ability to be in trial or in the immediate hearings before trial. Judge Jones said he took all that into consideration though, didn't he? He says I've taken into consideration his declining health and his age, but that was balanced against he has a long history of threatening judges. So all that was taken into consideration by the judge. Judge respectfully, I think that single comment, him saying that he took it into consideration in response to our objections, not even when he was actually stating what the sentence would be. I think that that would serve, that is what he has to say, but I don't think that that is evidence this court can rely on, especially given the extensive record that was created. And about the pattern, the pattern as the judge described of prior contact, what we had were five references in the PSI to letters that were written to judges in 2005 and 2007, 15 years before. The actual substance of those messages was long gone. The marshal who investigated at the time was present. He chose each time not to bring charges. That investigation- Where was this quote, what's this from? Can I have your permission to bring down to Miami a microwave radio frequency device that would blow, and they're referring to Judge King's, brains out of his head? Yes, Your Honor. I think there was some discussion at sentencing about how the context of that is Mr. Curtin perceives himself to be facing those kinds of mind raids. He is a self-declared American hero, like Don Quixote is a knight errant of Spain. He spends his time, if released, putting aluminum panels outside of his house to prevent mind raids. And he made a statement that was deemed at the time, not to be a prosecutable threat. And in the interim, what Marshal Wachowski in his wisdom decided was the appropriate thing to do, panned out. Mr. Curtin never ever hurt anybody. There was no allegation of any physical harm at any time. And Your Honor, I would like to say on the sufficiency point that I do not believe it is a reasonable inference that Mr. Curtin knew that Judge Maynard's father was a preacher, not when, not when the video was, was something that was old and not something he created for this, nor that he knew the word glory is sometimes used as death. I think if the government hadn't put us in a position of having to infer everything, they would have had a sufficient case here. All right. Thank you, Ms. Jayanti. We have your arguments. And so the court will be in